UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANGELA CUMMINGS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.;<br>UHS OF DELAWARE, INC.; VALLEY<br>HEALTH SYSTEM, LLC, d/b/a DESERT<br>SPRINGS HOSPITAL; RAEJOHNE FOSTER,<br><br>Defendants. | Case No. 2:13-cv-00479-APG-GWF<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Dkt. No. 15) |

## I. BACKGROUND

Plaintiff Angela Cummings worked as a "monitor tech/unit coordinator" for defendant Valley Health System, LLC ("Valley Health") at its Desert Springs Hospital (the "Hospital"). Cummings is a "black, African American female."[1] Valley Health is a subsidiary of UHS of Delaware, Inc. ("UHS") (the Court refers collectively to Valley Health, the Hospital, and UHS as the "Corporate Defendants"). Valley Health terminated Cummings on February 20, 2013.

Cummings alleges that during her employment, she suffered condescending treatment, economic deprivation, and derogatory comments due to her race and sex. More specifically, she alleges that she suffered increased scrutiny of time punches and breaks than co-workers of different races, and that female workers were deprived of adequate breaks and adequate access to the restroom. She also alleges she complained to management about the disparate treatment of female employees.

Cummings contends that defendant RaeJohne Foster subjected her to severe and pervasive discrimination based on her race and color. Foster allegedly referred to Cummings as an

---

[1] (Supplemental First Amended Complaint ("SFAC") ¶ 5.)

"animal" on one occasion. Foster also allegedly made threats and took steps to undermine Cummings in an attempt to get Cummings in trouble, sometimes for things Foster had done. Cummings further contends several co-workers complained to the Hospital about Foster's "atrocious" behavior in 2009. Cummings asserts she also filed written complaints about Foster to the Hospital's management, which were either not investigated or inadequately investigated. According to Cummings, the Corporate Defendants claimed they could find no harassing conduct or that the complaints were "hearsay." Cummings also asserts generally that non-African American co-workers received more favorable treatment when they made similar complaints to management.

On June 17, 2012, Cummings contacted the Nevada Equal Rights Commission ("NERC"). On July 23, she filed her first charge with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination. On July 31, the EEOC informed the Corporate Defendants of the charge. Shortly thereafter, Cummings contends generally, she suffered "systematic[] . . . [,] unjustified, pretextual, and simply false discipline" as retaliation for having filed the charge, and as a means to develop a paper trail to justify her later termination.[2]

On August 2, 2012, Cummings filed complaints with the Nevada Labor Commissioner's Office (the "NLC"), alleging that the Corporate Defendants had violated Nevada wage and hour statutes. On August 3, the NLC sent a letter to the Corporate Defendants, presumably informing them of the allegations.[3]

Sometime in December 2012, Foster allegedly told management that Cummings had browsed the internet on company computers during work hours. Cummings alleges generally that the Corporate Defendants ratified Foster's statement. Cummings also contends that Foster accused her of "criminal, unethical, and unprofessional conduct," but it is unclear to which specific conduct Cummings refers.

---

[2] (SFAC ¶ 13.)
[3] (SFAC ¶ 15.)

On December 18, 2012, Cummings met with Yomi Fabiyi, the human resources administrator. She complained she had been treated unfairly by co-workers as retaliation, citing only "work scheduling over the 2012 holiday season" in support.[4] Instead of investigating Cummings's complaints, Fabiyi issued three written warnings to her. The content of those warnings is unknown, but Cummings alleges they were retaliatory.

On January 11, 2013, Cummings was indefinitely suspended from her job. She alleges the suspension was due at least in part to Foster's false report that she had been surfing the web on company time.

On January 14, 2013, Donna Atkins, the Hospital's Interim Director, entered the Telemetry Department, where Cummings had worked, with the Hospital's new Critical Care Director and announced that the door lock to that department had been changed because Cummings had called in and made threats. Cummings alleges that Foster was the source of this allegedly false statement, and that Foster made it up to defame Cummings and cause her termination.

On January 16, 2013, Cummings lodged another complaint with the NLC concerning required breaks under Nevada statute. On January 28, 2013, Cummings filed another charge of discrimination with the EEOC, this time also alleging retaliation.

On February 20, 2013, Cummings was terminated from employment.

In March 2013, Cummings filed suit against the Corporate Defendants and Foster.[5] She pleads the following claims for relief: (1) race and sex discrimination under Title VII of the Civil Rights Act of 1964; (2) retaliation under Title VII; (3) race discrimination under 42 U.S.C. § 1981; (4) retaliation under § 1981; (5) wrongful discharge in violation of public policy ("tortious discharge"); (6) defamation; (7) wrongful interference with prospective economic advantage; (8) negligent training and supervision; and (9) injunctive relief.

---

[4] (SFAC ¶ 14.)

[5] She also named United Healthcare Services, Inc. as a defendant, but Cummings has voluntary dismissed that party. (Dkt. No. 12.)

1   This Order resolves the pending motion to dismiss.[6]

## II. ANALYSIS

### A. Legal Standard — Fed. R. Civ. P. 8, 12(b)(6)

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[7] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[8] "Factual allegations must be enough to rise above the speculative level."[9] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[10]

District courts must apply a two-step approach when considering motions to dismiss.[11] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[12] Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[13] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[14]

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[15] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged

---

[6] (Dkt. No. 15.)
[7] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[8] *Iqbal*, 556 U.S. at 678.
[9] *Twombly*, 550 U.S. at 555.
[10] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).
[11] *Id.* at 679.
[12] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).
[13] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.
[14] *Iqbal*, 556 U.S. at 678.
[15] *Id.* at 679.

misconduct.[16] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[17] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[18] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."

### B. Proper Defendant — United Healthcare Services

Defendants argue first that UHS is not a proper defendant because it did not employ Cummings and because UHS does not qualify as a "joint employer" with Valley Health. Cummings argues that she has sufficiently pleaded "joint employer" status and that UHS is a required party under Rule 19(a)(1)(A) because the Court cannot accord complete relief in UHS's absence.

"In the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary."[19] Courts should consider whether the parent-subsidiary relationship is a "sham" or if circumstances exist that would render the parent liable for its subsidiary's debts.[20] Courts should also consider whether the parent "participated in or influenced the employment policies of the subsidiary," and whether the parent has "undercapitalized [the subsidiary] in a way that defeat[s] potential recovery by a Title VII plaintiff."[21] This standard readily extends to other statues prohibiting discrimination, and to contexts where the subsidiary is not wholly owned.[22] Defendants' proposed use of the "integrated

---

[16] *Id.* at 663.

[17] *Id.* at 679 (internal quotation marks and citation omitted).

[18] *Twombly*, 550 U.S. at 570.

[19] *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993 (9th Cir. 1981).

[20] *Id.*

[21] *Id.*

[22] *Cf. Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1005 (E.D. Cal. 2013).

enterprise" test is inappropriate, as the Ninth Circuit does not use that test to determine whether separate corporate entities are a single employer.[23]

Cummings pleads one sole allegation in this regard:

> With exception of Defendant Foster, Defendants are all parent or subsidiary companies of one another, or are otherwise affiliated with one another such that they are deemed to be joint employers under applicable law and therefore are all answerable to the claims for damages and other relief as set forth herein.[24]

This conclusory allegation does not support a reasonable inference that a "special circumstance" exists which would render UHS liable for the actions of Valley Health.[25] Nor does it provide any basis for the Court to infer that UHS's absence will prevent the Court from according complete relief to Cummings, if she prevails on the merits. Thus, UHS is not a required party under Rule 19(a)(1)(A). Accordingly, the Court dismisses UHS from this case.

### C.  Title VII Discrimination Claims (against Corporate Defendants)

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin.[26, 27] To prevail on a Title VII discrimination claim for disparate treatment,[28] a plaintiff must establish a prima facie case by presenting evidence that "gives rise to an inference of unlawful discrimination."[29] A plaintiff can

---

[23] *Id.*; *Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1034 n.28 (D. Haw. 2004).

[24] (SFAC ¶ 7.)

[25] *See Iqbal*, 556 U.S. at 663.

[26] *See* 42 U.S.C. § 2000e–2(a).

[27] The Defendants concede that Cummings satisfied the administrative exhaustion requirements of Title VII, for both the discrimination and retaliation claims. (Dkt. No. 34 at 2.)

[28] Cummings also claims sex discrimination under the theory of disparate impact. (SFAC ¶ 11.) However, her Title VII claims are properly construed as disparate treatment claims. Disparate impact arises when "some employment practices, [usually facially neutral,] adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 988 (1988). Cummings's alleged mistreatment of women is not facially neutral.

[29] *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

establish a prima facie case through direct evidence or through circumstantial evidence via the burden shifting framework set forth in *McDonnell Douglas*.[30]

Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case.[31] To do so, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her position and performed her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.[32] If the plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."[33] If the defendant meets this burden, the plaintiff must then prove that the defendant's proffered reasons for the termination are mere pretext for unlawful discrimination.[34] Here, the focus is only on whether Cummings has sufficiently pleaded a prima facie case.

For purposes of a Title VII discrimination claim, "an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment,"[35] such as suspension, written warnings, and termination.[36]

As to racial discrimination, Cummings's only specific allegations are that Foster called her an "animal" and that her "time punches . . . , breaks and/or break scheduling" was subject to increased scrutiny compared to coworkers of other races.[37] The remainder of her allegations are generalized and unfounded. Viewed in the light most favorable to Cummings, her allegations do

---

[30] *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

[31] *McDonnell Douglas*, 411 U.S. at 802.

[32] *Hawn v. Executive Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

[33] *Id.* at 1155 (internal quotation marks and citation omitted).

[34] *Id.*

[35] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

[36] *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847–48 (9th Cir. 2004).

[37] (SFAC ¶ 28.)

not support a reasonable inference of racial discrimination.[38]  The Court does not understand the term "animal" to be connected to race, although it is certainly a derogatory slur.  Also, she does not provide even one example of how other similarly situated non-African American employees received preferential treatment concerning time punches and rest/meal breaks.  Nor does she explain in any detail how her treatment was inferior.  Thus, Cummings has failed to plead a prima facie case of racial discrimination.

However, as to sex discrimination, Cummings's allegations are sufficiently particularized.  Her allegation that women were prevented from adequate breaks and from adequate access to the restroom, resulting in "embarrassing and humiliating feminine accidents," renders plausible a prima facie case of sex discrimination.

In sum, the Court dismisses the Title VII race discrimination claim.  The Title VII sex discrimination claim survives.

### D. Title VII Retaliation Claims (against Corporate Defendants)

In addition to prohibiting discrimination, Title VII prohibits retaliation by making it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment because [she] has opposed any practice that is made an unlawful employment practice by this subchapter."[39]  The *McDonnell Douglas* burden-shifting analysis applies also to Title VII retaliation claims.[40]  To establish a prima facie case of retaliation, a plaintiff must show (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.[41]  "An action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."[42]  Suspensions, written warnings, and termination are all adverse employment actions.[43]  Asserting one's civil rights, such as the

---

[38] *Iqbal*, 556 U.S. at 663.

[39] 42 U.S.C. § 2000e–3(a).

[40] *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

[41] *Id.*

[42] *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

[43] *Id.* at 1241.

right to be free from racial or gender discrimination, is a protected activity under Title VII.[44] "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."[45] "In addition, the plaintiff must make some showing sufficient . . . to infer that the defendant was aware that the plaintiff had engaged in protected activity."[46]

Cummings engaged in protected activity by complaining to the NERC and filing a charge with the EEOC. The July 31, 2012 letter from the EEOC to the Defendants notified them of her protected activity. The adverse employment actions she suffered—insufficient internal investigations, written warnings, a suspension, and termination—were sufficiently close in time to her protected activities to render it plausible that the protected activity caused the adverse actions.[47]

In their briefs, Defendants did not engage in the *McDonnell Douglas* burden-shifting analysis beyond attacking Cummings's prima facie case. Accordingly, the Title VII retaliation claim survives.

E.  **42 U.S.C. § 1981 — Discrimination Claim (against Corporate Defendants)**

42 U.S.C. § 1981 "prohibits [racial] discrimination in the 'benefits, privileges, terms and conditions'" of employment.[48] "When analyzing § 1981 claims, [courts] apply the same legal principles as those applicable in a Title VII disparate treatment case," although administrative exhaustion is not a requirement to proceed under § 1981.[49] Title VII and § 1981 are not redundant, however. "Title VII prohibits employment discrimination on account of race, sex, religion, and national origin. . . . Section 1981 . . . is limited to a prohibition of racial

---

[44] *Brooks*, 229 F.3d at 928.

[45] *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

[46] *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, 2003 WL 21027351 (9th Cir. May 8, 2003).

[47] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002).

[48] *Surrell*, 518 F.3d at 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)).

[49] *Id.* (internal quotation marks and citation omitted).

discrimination."[50] "Title VII and section 1981 are thus overlapping, but independent remedies for racial discrimination in employment."[51] For the reasons set forth above as to the Title VII race discrimination claim, the Court dismisses the § 1981 claim.

### F.   42 U.S.C. § 1981 — Retaliation Claim (against Corporate Defendants)

The Supreme Court has held that § 1981 encompasses retaliation claims.[52] The elements of the prima facie case for a § 1981 retaliation claim and a Title VII retaliation claim are identical.[53] For the reasons set forth above as to the Title VII retaliation claim—particularly that Cummings's EEOC charge alleged race discrimination—the § 1981 retaliation claim survives.

### G.   Tortious Discharge (against Corporate Defendants)

Under Nevada law, an employer generally may terminate an at-will employee for any reason without liability for wrongful discharge.[54] However, Nevada recognizes an exception to this rule where an employer discharges an employee for a reason which violates a strong public policy.[55] "To prevail, the employee must be able to establish that the dismissal was based upon the . . . employee's engaging in conduct which public policy favors."[56] The employee's burden at trial is to prove that the protected conduct was the "proximate cause" of her discharge; a "mixed motives"[57] theory is insufficient for tortious discharge.[58] Although the Nevada Supreme Court uses the term "proximate cause," the relevant Nevada Jury Instruction defines that term to mean

---

[50] *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982).

[51] *Id.*

[52] *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008).

[53] *See Surrell*, 518 F.3d at 1108.

[54] *Smith v. Cladianos*, 104 Nev. 67, 67 (1988).

[55] *See Hansen v. Harrah's*, 100 Nev. 60, 63 (1984).

[56] *Bigelow v. Bullard*, 111 Nev. 1178, 1182 (1995).

[57] "In a Title VII mixed motives case, the plaintiff can recover upon a showing that the adverse employment decision resulted from a mixture of legitimate reasons and discriminatory motives . . . To succeed on a mixed-motives theory, the plaintiff must demonstrate that it is more likely than not that a protected characteristic played a motivating part in the employment decision." *Allum v. Valley Bank of Nev.*, 114 Nev. 1313, 1318 (1998) (internal quotation marks and citations omitted).

[58] *Id.* at 1320.

both proximate cause and actual cause, as generally understood in tort law to indicate the foreseeability of harm without superseding causes and but-for cause, respectively.[59]

The Nevada Supreme Court recognizes whistleblowing as "an established public policy of this state."[60] To be entitled to protection for whistleblowing, however, the employee must expose her employer's illegal activity to the proper authorities.[61] "[W]histleblowing which serves a public purpose should be protected. So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged."[62] The conduct reported by the employee need not actually be illegal.[63] The employee's reasonable, good faith suspicion that her employer participated in illegal conduct is sufficient.[64]

Cummings reported the alleged statutory wage and hour violations to the proper authorities—the Nevada Labor Commissioner. Her first report was in August 2012, six months before her termination, and her second report was in January 2013, five days after her suspension and one month before termination. Although she made the second report after being suspended, this is not enough to support an inference of bad faith in light of the timing of her first report. The court can reasonably infer that she had a reasonable, good faith belief that her employer had violated the law.[65] The temporal connection to her termination renders it plausible that her whistleblowing caused her termination.[66] As such, the tortious discharge claim survives.

---

[59] *See id.* at 1320 n.4 (quoting Nev. J.I. 4.04 ("[The] proximate cause of injury, damages, loss, or harm is a cause which, in natural and continuous sequence, produces the injury, damage, loss, or harm, and without which the injury, damages, loss, or harm, would not have occurred.")).

[60] *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 292–93 (1989) (per curiam) ("[F]iring an at-will employee for reporting illegal conduct violates an established public policy of this state.").

[61] *Id.* at 293.

[62] *Id.* (internal quotation marks and citation omitted).

[63] *Allum*, 114 Nev. at 1322.

[64] *Id.*

[65] *See Iqbal*, 556 U.S. at 663.

[66] *See id.*

### H. Defamation (against all Defendants)

Under Nevada law, "[a] defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[67] However, the defendant bears the burden of proving that a publication is "privileged."[68] [69] Privileged communications include intra-corporate communications that occur "in the regular course of the corporation's business."[70]

The Nevada Supreme Court has not explained precisely what conduct falls within the regular course of a corporation's business. But the Nevada Supreme Court's general definition of conditional privileges is informative, and has been followed by this Court to assess the intra-corporate privilege:

> A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty.[71]

---

[67] *Pope v. Motel 6*, 121 Nev. 307, 315 (2005).

[68] *Id.* at 318.

[69] In the seminal case of *Simpson v. Mars*, 113 Nev. 188, 191 (1997), the Nevada Supreme Court articulated the rationale for so burdening the defendant:

> The circumstances of the communication of the allegedly defamatory material are uniquely within the knowledge of the corporation and its agents. It is unfair to put the burden on the plaintiff to determine and allege the circumstances of communication within the corporation before she can make a prima facie case. Therefore, the circumstances of communication are more appropriately an element of the defense to an action for defamation rather than an element of the plaintiff's prima facie case. . . .
>
> Since most people spend a good part of their time, effort and lives at their work, and have many colleagues, friends, and acquaintances there, to allow an employer to circulate lies around the workplace is particularly damaging.

[70] *Simpson*, 113 Nev. at 191–92 (1997).

[71] *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 62 (1983), *cited in Hoff v. Walco Int'l, Inc.*, No. 3:11-cv-00623, 2013 WL 275298 at *2 (D. Nev. Jan. 23, 2013); *Swan v. Bank of Am. Corp.*, No. 2:07-cv-00217, 2008 WL 2859066 at *10 (D. Nev. Jul. 22, 2008)

"Whether a particular communication is conditionally privileged by being published on a 'privileged occasion' is a question of law for the court."[72] The plaintiff can defeat the privilege, however, by proving that "the defendant abused the privilege by publishing the communication with malice in fact."[73] The privilege may also be abused "by publication in bad faith, with spite or ill will or some other wrongful motivation toward the plaintiff, and without belief in the statement's probable truth."[74] These forms of abuse echo the Restatement (Second) of Torts, which provides that a publisher forfeits a conditional privilege if she "knows the matter to be false, or . . . acts in reckless disregard as to its truth or falsity," or she commits "excessive publication."[75] The test for excessive publication is whether the publisher "'could have done all his interest or duty demanded without defaming the plaintiff.'"[76]

As to damages, "[c]ertain classes of defamatory statements are considered defamatory per se and actionable without proof of damages."[77] Two types of defamation per se are false statements imputing a crime or imputing a person's lack of fitness for trade, business, or profession.[78]

Cummings alleges three defamatory statements: (1) Foster's statement "to several managers including those in the Desert Springs Hospital HR department" that Cummings had violated company policy by browsing the internet on a company computer during work hours; (2) Foster's statement to Donna Atkins, the Hospital's Interim Director, that Cummings had called the Hospital and made threats; and (3) Atkins's statement to the entire Telemetry Department, in the presence of the Hospital's Critical Care Director, that the door lock to the

---

[72] *Id.*

[73] *Id.*

[74] *Id.* at 62 n.2.

[75] RESTATEMENT (SECOND) OF TORTS §§ 600, 604 (1977).

[76] DAVID ELDER, DEFAMATION: A LAWYER'S GUIDE § 2:34 (2013) (quoting *Garziano v. E.I. Du Pont De Nemours & Co.*, 818 F.2d 380, 392 (5th Cir. 1987)); *see also* RESTATEMENT (SECOND) OF TORTS § 604.

[77] *Pope*, 121 Nev. at 315.

[78] *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1192 (1993).

Telemetry Department was changed because Cummings called in and made threats. Cummings alleges that each statement was made with malice, that the corporate defendants ratified the first statement, and that Foster knew that both of her statements were false.

Cummings sufficiently pleads the four elements of defamation. However, Defendants assert protection under the intra-corporate privilege. They concede it is an affirmative defense, but contend that the SFAC itself provides sufficient factual support to prove the privilege. Defendants are correct on the legal point that a plaintiff can plead herself out of a claim by admitting facts that prove an affirmative defense.[79] The question, then, is whether the factual allegations in the SFAC prove the intra-corporate privilege.

The statements were certainly intra-corporate in that each was made between co-workers: Foster to management, Foster to Atkins, and Atkins to the Telemetry Department (in the presence of the Critical Care Director). Foster's statements were made in the regular course of the company's business because an employee's reporting of a co-worker's alleged company-related wrongdoing is something that normally occurs within a business.[80] "A corporation has an unquestionable interest in investigating and correcting a situation where one of its employees may be engaged in suspicious conduct within the company."[81] Complaints of the sort made by Foster are necessary antecedents to an internal corporate investigation and necessary to corporate and employee security. Similarly, Atkins's statement was made in the regular course of business. Employees in the Telemetry Department, where Cummings worked, have a direct interest in knowing that the door locks have been changed and that one of their former co-workers has made threats—for their and the company's security if they ever encounter Cummings again.

---

[79] See Employers Ins. of Wausau v. Price Aircraft Co., LLC, 283 F. Supp. 2d 1144, 1147 (D. Haw. 2003) ("Dismissal is . . . required if an affirmative defense . . . is apparent from the face of the complaint." (citing 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34(4)); Russell v. Thomas, 129 F. Supp. 605, 605–06 (S.D. Cal. 1955).

[80] See Swan, 2008 WL 2859066 at *10 ("Discussing employee performance and status is in the course of the human resources employees' regular course of business."); Gordon v. Dalyrmple, No. 3:07-cv-00085, 2008 WL 2782914 at *6 (D. Nev. Jul. 8, 2008) (employee sent a letter complaining of his superior through "the proper channels").

[81] Popko v. Cont'l Cas. Co., 233 Ill. App. 3d 257, 264 (2005).

However, there is nothing in the SFAC to support the necessary element of the affirmative defense that the statements were made in good faith. On the contrary, Cummings pleads that the defamatory statements were made with malice and ill will. Therefore, the intra-corporate privilege is not established by the SFAC's factual allegations. Accordingly, the defamation claims survive.

I. **Wrongful Interference with Prospective Economic Advantage ("WIPEA") (against Foster)**

The tort of WIPEA has five elements:

(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.[82]

"'The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'"[83]

An at-will employee may sue a third party who interferes with his employment relationship, because that person has tortiously interfered with his prospective economic advantage.[84] Courts in California, Arizona, Idaho, and Oregon agree, as does the Restatement (Second) of Torts.[85] However, "[i]n Nevada, a party cannot, as a matter of law, tortiously interfere with its own contract."[86] "[A]gents acting within the scope of their employment—i.e., the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party."[87]

---

[82] *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (1987).

[83] *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 106 Nev. 283, 288 (1990) (quoting RESTATEMENT (SECOND) OF TORTS § 766B(d) (1979)).

[84] *See Lauster v. Grand Sierra Resort Corp.*, No. 3:10-cv-00305, 2010 WL 5477766 at *4 (D. Nev. Dec. 29, 2010).

[85] *See id.* at *3 (collecting cases); RESTATEMENT (SECOND) OF TORTS §§ 766 cmt. g, 766B cmt. c, 768 cmt. i.

[86] *Welder v. Univ. of S. Nev.*, 833 F. Supp. 2d 1240, 1244 (D. Nev. 2011).

[87] *Id.*

Similar to the defamation context, privileged communications "cannot be used to prove an interference with a prospective business relation claim unless the privilege is abused by bad faith, malice with spite, ill will, or some other wrongful motivation, and without belief in the statement's probable truth."[88]

There is a question of fact as to whether Foster acted in her own interest or in the Corporate Defendants' interest when she accused Cummings of surfing the web on company time and of calling in a threat, but the issue is sufficiently pleaded. Cummings alleges that Foster acted with malice and ill will to intentionally harm Cummings's employment status. As explained above in relation to defamation, Defendants cannot establish the intra-corporate privilege on the face of the complaint. The other elements of this claim are sufficiently pleaded. Accordingly, this claim survives.

### J. Negligent Training and Supervision (against Corporate Defendants)

Nevada recognizes the tort of negligent training, supervision, and retention.[89] To state a claim for negligent supervision, the plaintiff must show (1) a general duty on the employer to use reasonable care in the training or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation.[90] "Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else."[91] To that end, courts consider whether antecedent circumstances would "give[] the employer reason to believe that the person, by reason of some

---

[88] *Bank of Am. Nev. v. Bourdeau*, 115 Nev. 263, 267 (1999).

[89] *See Hall v. SSF, Inc.*, 112 Nev. 1384, 1394 (1996).

[90] *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013); *Hall*, 112 Nev. at 1394 ("[T]he employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions.").

[91] *Okeke*, 927 F. Supp. 2d at 1028 (citing *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005)).

attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities."[92]

Defendants contend that Cummings can recover only if she suffered physical harm. However, the Court need not reach the issue of whether physical harm is an element of negligent supervision because Cummings has not sufficiently pleaded the four elements listed above.

Cummings alleges with insufficient detail that the Defendants were "made aware" in 2009 of Foster's unsuitability for her position and the "misery" she was causing co-workers, and that the Defendants ignored various internal complaints about Foster's "atrocious" behavior. From these vague allegations, it is possible, but not plausible, that Valley Health had reason to believe that Foster created an undue risk of harm to her co-workers.[93] Accordingly, the Court dismisses this claim.

### K. Injunctive Relief (against all Defendants)

Defendants are correct that injunctive relief is a remedy, not a claim.[94] The Court thus dismisses the claim for injunctive relief. However, Cummings may still obtain the remedy of injunctive relief as appropriate under the other claims for relief.

////
////
////
////
////
////
////
////

---

[92] *Hall*, 112 Nev. at 1392 (internal quotation marks and citation omitted).
[93] *See Iqbal*, 556 U.S. at 663.
[94] *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1038 (N.D. Cal. 2010).

### III. CONCLUSION

In accord with the above, the Court hereby ORDERS:

1. The Motion to Dismiss (Dkt. No. 15) is GRANTED IN PART and DENIED IN PART.

2. The Title VII race discrimination claim is dismissed.

3. The 42 U.S.C. § 1981 claim is dismissed.

4. The negligent training and supervision claim is dismissed.

5. The claim for injunctive relief is dismissed.

6. UHS is dismissed from this case.

DATED this 31st day of March, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE